UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FARON TIMOTHY STRAUSBAUGH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-1213** |
| **TERREBONNE PARISH CRIMINAL JUSTICE COMPLEX/SHERIFF'S OFFICE, ET AL.** | **SECTION: "R"(3)** |

### REPORT AND RECOMMENDATION

Plaintiff, Faron Timothy Strausbaugh, a pretrial detainee, filed an *ex parte* motion for a temporary restraining order and preliminary injunction. Rec. Doc. 6. The motion and underlying matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2).[1] Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing and without need for a response from defendants.[2]

---

[1] Without consent of the parties, a magistrate judge is without jurisdiction to issue a dispositive order on a motion for temporary restraining order and preliminary injunction. *Ritter v. Cook*, 45 F. App'x 325, 2002 WL 1899582, at *2 (5th Cir. 2002) (citing *Withrow v. Roell*, 288 F.3d 199, 204-05 (5th Cir. 2002) (holding that magistrate judge must secure consent of all parties before acting pursuant to 28 U.S.C. § 636(c))).

[2] Summonses have issued for the identified defendants, but they have not yet been served by the United States Marshal As defendants have not yet been properly served, they have no notice of this motion and have thus not had an opportunity to respond.

I.     **Background**

Plaintiff filed this *pro se* and *in forma pauperis* civil action under 42 U.S.C. § 1983. He named as defendants Terrebonne Parish Criminal Justice Complex/Sheriff's Office, Terrebonne Parish Consolidated Government, Terrebonne Parish Criminal Justice Complex Medical Department, Nurse Tina, Rhonda Ledet, S. Bergeron, Captain Martin, and Leland Autemeaux. In the complaint, plaintiff, who was arrested on April 2, 2024, claims that defendants were deliberately indifferent to his medical needs relating to his Wolff-Parkinson-White syndrome[3] which culminated in him being injured and hospitalized after he fainted and fell down a flight of stairs on April 29, 2024.

Plaintiff specifically alleges that he complained of chest pains upon his arrest on April 4, 2024, and was placed in the medical department for observation. Rec. Doc. 3 at 4. He claims he had seizures on April 6, 2024, and was taken to Chabert Medical Center where he was treated. *Id.* at 4, 6. Upon his return, he was placed in medical observation. *Id.* at 6. He was moved from medical to a dormitory on April 12, 2024, but claimed he had chest pains on April 15, 2024. *Id.* Plaintiff alleges that he was taken to the medical department and placed in a restraint chair, but that "Nurse Tina" refused to check his blood pressure. *Id.* At his request, he was returned to his dorm. *Id.* at 7.

---

[3] Wolff-Parkinson-White (WPW) syndrome is a congenital heart defect in which an extra electrical pathway exists between the heart's upper and lower chambers resulting in a fast heartbeat. *See* https://www.mayoclinic.org/diseases-conditions/wolff-parkinson-white-syndrome/symptoms-causes/syc-20354626.

Plaintiff alleges that he suffered chest pains again on April 26, 27 and 28, 2024, and had blood pressure checks. *Id.* at 7. On April 29, 2024, when he suffered chest pains, an inmate told him to sit down so plaintiff sat at the top of the stairs. *Id.* at 7. Plaintiff alleges that he blacked out and toppled down the stairs. *Id.* at 7-8. He was transported first to Chabert Medical and later t to Oschner Medical Center in New Orleans, where he was treated. *Id.* at 8. According to plaintiff, he was told he was suffering from complications of Wolff-Parkinson-White syndrome and an ablation procedure was recommended. *Id.* at 8. Since his return to the jail, he has been housed in a medical cell. *Id.* at 10. As a result of the alleged medical indifference, plaintiff seeks compensatory damages for his medical expenses and for pain and suffering. *Id.* at 10. He also seeks to be released or moved to a different facility. *Id.*

**II.    Analysis**

    A.  **Request for a Temporary Restraining Order**

In connection with his complaint, plaintiff has filed a motion for a temporary restraining order and preliminary injunction. Rec. Docs. 6. Plaintiff claims that he was taken out of the general population dorm and placed in a four-person medical cell where he now has less privileges relating to showering and phone calls. He also claims that he was placed on a commissary restriction for two weeks and denied hygiene items and stationery for kicking a door. He alleges that his mental health is being neglected. Specifically, he claims that he has been unable to see a doctor about his depression and has been denied his psychiatric medications. He claims that he is housed in a medical cell with two violent offender and is being denied recreation.

Plaintiff alleges that he fears for his life and requests that he be transferred to a medical facility.

Despite plaintiff's request, in part, for a temporary restraining order, his motion must be construed solely as one for a preliminary injunction because the relief he seeks would extend beyond the ten-day limit of a temporary restraining order. *Neal v. Federal Bureau of Prisons*, 76 F. App'x 543, 545 (5th Cir. 2003). The remaining issue for purposes of this Report and Recommendation is the request for a preliminary injunction.

### B. Request for a Preliminary Injunction

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *accord Louisiana ex rel. Murrill v. United States Dep't of Educ.*, No. 24-30399, 2024 WL 3452877, at *2 (5th Cir. July 17, 2024) ("the historical purpose of a preliminary injunction … is to maintain the status quo pending litigation."). A plaintiff seeking a preliminary injunction must make a clear showing that his case satisfies four criteria: (1) a substantial likelihood exists that he will succeed on the merits of his claim; (2) a substantial threat of imminent and irreparable harm exists if the injunction is not granted; (3) the threatened injury outweighs any harm to defendants if the injunction is granted; and (4) the injunction will not undermine the public interest. *See Valley v. Rapides Par. School Board*, 118 F.3d 1047, 1051 (5th Cir. 1997); *see also Ingebresten v. Jackson Pub. School District*, 88 F.3d 274, 278 (5th Cir. 1996); *Doe v.*

*Duncanville Indep. Sch. District*, 994 F.2d 160, 163 (5th Cir. 1993); *Holland Am. Insurance Co.. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). A preliminary injunction is therefore an "extraordinary remedy" which should be granted only if the movant has carried the burden of persuasion on all four of the above prerequisites; a failure to satisfy even one of the four factors requires denial of the preliminary injunction. *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). As a result, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Id.*

Furthermore, in the prison setting, requests for a preliminary injunction are "viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.' " *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir.1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir.1982)). "Except in extreme circumstances," the "federal courts are reluctant to interfere" with matters of prison administration and management, including prison discipline and classification of inmates. *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir.1971) (affirming denial of injunction to obtain release from administrative segregation). For the reasons below, plaintiff has not established that the exceptional remedy of a preliminary injunction is warranted in this case.

First, the allegations in plaintiff's motion are that jail officials are failing to treat his psychological condition and are violating his rights in other ways, including restricting his recreation and hygiene, access to commissary, ability to make telephone calls, and potentially access to the courts. Yet this lawsuit concerns his

5

medical care related to his Wolff-Parkinson-White syndrome and the injuries resulting from a fall on April 29, 2024. Therefore, the requests in plaintiff's motion are not appropriate in the context of this lawsuit. Rather, as the U.S. Court of appeals for the Eighth Circuit has explained:

> A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. *See Dataphase Sys., Inc., v. C L Sys., Inc.*, 640 F.2d 109, 113 & n. 5 (8th Cir. 1981) (en banc). *Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint. See Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975). It is self-evident that [plaintiff]'s motion for temporary relief has nothing to do with preserving the district court's decision-making power over the merits of [plaintiff]'s 42 U.S.C. § 1983 lawsuit. To the contrary, [plaintiff]'s motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit. *See Stewart v. United States I.N.S.*, 762 F.2d 193, 198-99 (2d Cir. 1985).

*Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (emphasis added). *See also Power v. Starks*, No. 4:16-CV-00045, 2017 WL 2062940, at *1 (N.D. Miss. May 12, 2017) ("Because a preliminary injunction depends on the prisoner's likelihood of success on the merits, a district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit. Accordingly, courts have routinely declined to grant a prisoner injunctive relief related to conduct unrelated to the underlying claims of his lawsuit." (citations, quotation marks, and brackets omitted)); *Lando & Anastasi, LLP v. Innovention Toys, L.L.C.*, Civ. Action No. 15-154, 2015 WL

12564201, at *2 (E.D. La. Oct. 15, 2015) ("[W]hile a preliminary injunction is appropriate to grant intermediate relief of the same character as that which may be granted finally, a district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." (quotation marks and brackets omitted)); *Schwartz v. United States Department of Justice*, Civ. Action No. 06-5581, 2007 WL 2916465, at *3 (D.N.J. Oct. 4, 2007) ("A preliminary injunction grants intermediate relief of the same character as that which may be granted finally. When the movant seeks intermediate relief beyond the claims in the complaint, the court is powerless to enter a preliminary injunction." (citations and quotation marks omitted)).

Here, plaintiff is requesting immediate court intervention with respect to his allegations that defendants are now retaliating against him. Yet he does not explain how his instant request is in any way aimed at preserving the status quo with respect to the claims in this lawsuit, which concern the medical treatment of his Wolff-Parkinson-White syndrome, which made him faint and fall. As a result, he has not established that the immediate relief he seeks is appropriate and necessary.[4]

If plaintiff believes that other of his constitutional rights are being violated, his recourse, *after exhausting his administrative remedies as required by 28 U.S.C.*

---

[4] The Court notes that, while plaintiff claims that he is being denied treatment and medication for his psychiatric condition, records show that no psychiatric medication prescriptions were on file at his pharmacy. Rec. Doc. 15-1 at 249. Additionally, plaintiff, at his request, was referred to see Dr. Lo about his depression on June 4, 2024, but plaintiff twice refused to see the doctor. Rec. Doc. 15-2 at 13. Nonetheless, the medical staff indicated that they would "try again." *Id.*

7

*§ 1997e(a)*, is to file a separate lawsuit asserting those claims against the individuals allegedly violating that right and, if appropriate, then to seek the injunctive relief he desires in that lawsuit.

Even if the Court broadly construes plaintiff's motion to be based on defendants' treatment of his Wolff-Parkinson-White syndrome and the injuries resulting from his fall on April 29, 2024, he is still not entitled to relief. At this stage of the litigation, plaintiff has failed to establish the first element, a likelihood of success on the merits of his deliberate indifference claim.

After reviewing the allegations in the lawsuit, the undersigned held a status conference on June 3, 2024 and ordered jail officials to provide both this Court and plaintiff with certified copies of his medical records. Rec. Doc. 11. Those records were produced and provided to plaintiff for his use in this case and were filed into this federal record under seal. *See* Rec. Docs. 15-1 and 15-2. The records show that plaintiff has consistently received medical treatment since his arrest on April 4, 2024.

- Plaintiff was treated by emergency medical personnel prior to being brought to the facility on April 4, 2024. Rec. Doc. 15-1 at 299. The next day, April 5, 2024, plaintiff fainted in the jail medical department. *Id.* at 295. He complained of chest pains and was placed in a restraint chair. *Id.* His blood pressure and pulse were monitored, and he remained in the chair for observation. *Id.*

- On April 6, 2024, plaintiff's medical examination at the jail was completed. *Id.* at 296-97. Plaintiff reported that he took mental health medications and further reported that he had prescriptions at Walmart's pharmacy—a claim that ultimately could not be verified. *Id.* at 297.[5]

---

[5] On April 15, 2024, Walmart Pharmacy, the pharmacy provided by plaintiff, was called to verify plaintiff's prescription medications. Rec. Doc. 15-1 at 249; *see id.* at 296. No prescriptions for psychiatric medications were on file. *Id.*

8

- Later that day, plaintiff was brought to Chabert Medical Center due to an inability to urinate. *Id.* at 268-81, 291-94. The transporting officer reported that plaintiff had a vomiting and "shaking episode" en route. *Id.* at 268, 272. Plaintiff had a seizure-like episode as well as an episode of vomiting in the emergency department. *Id.* at 266. Plaintiff reported that he had recently ingested an unknown substance believing it to be methamphetamine. *Id.* at 268, 272. The examining physician opined that it was a possible seizure but also possible secondary gain from seizure. *Id.* at 272. A head CT was normal. *Id.* at 271. Plaintiff was treated for urinary retention. *Id.* at 273. His condition was stable upon release, and he was referred to a neurologist and urologist. *Id.* at 273, 279-80.[6]

- On April 7, 2024, plaintiff was brought to the medical department after he fell in his cell. *Id.* at 283. He was observed having random movements lasting about thirty seconds. *Id.* He then held his breath and spit all over. *Id.* Minutes later, he spoke clearly and asked to return to his cell. *Id.*

- On April 8, 2024, plaintiff was brought to the medical department for vomiting. *Id.* at 282. His vitals were normal and his speech clear. *Id.* He was given an anti-nausea medication and returned to his cell. *Id.* On April 11, 2024, plaintiff was removed from medical observation as his condition was stable and he was moved into general population. *Id.* at 250.

- The records reflect that plaintiff was injured when he fell down a flight of stairs on April 29, 2024. *Id.* at 236-39, 242-43. He was taken to Chabert Medical Center, where he was examined and underwent imaging and other testing. *Id.* at 202-19. The examining physician opined that a seizure was unlikely and diagnosed plaintiff with syncope and collapse. *Id.* at 217-18.

- Plaintiff was transferred to Ochsner Medical Center in New Orleans for a neurology and cardiology consult. *Id.* at 217, 219, 222-34, 251-67. An MRI of his spine showed no evidence of traumatic malalignment or acute fracture. *Id.* at 222. Examination revealed some decreased sensation in

---

[6] The records indicate that plaintiff was seen by the medical department for complaints of tooth pain and difficulty urinating on April 21 and 23, 2024. Rec. Doc. 15-1 at 241, 248. Those records do not indicate that plaintiff complained of chest pain. *Id.* at 240-41, 248.

upper and lower extremities and diffuse weakness, possibly effort dependent *Id.* at 230, 233-34. EEG was normal. *Id.* at 227-28. The examining physician opined that the episode was cardiac syncope rather than seizure-like activity. *Id.* at 230, 234. An outpatient ablation was recommended. *Id.* at 225. Plaintiff was discharged from the hospital on May 1, 2024. *Id.* at 193-201.

- On May 18, 2024, plaintiff requested to be seen for complaints of palpitations and chest pains. *Id.* at 473. On May 19, 2024, plaintiff complained of severe pain in his back, hips and neck and a headache. *Id.* at 477. He was examined that same day and no distress was noted. He was told he could request over the counter medication for pain. *Id.* at 473, 477. He was examined on May 21, 2024 due to a complaint of tooth pain. *Id.* at 476. No abscess was found and there was no need for antibiotics. *Id.*

- On May 22, 2204, he again complained of tooth pain but declined to be seen when he was called. *Id.* at 475. He was placed on the medical call list again at his request, but later refused to see Dr. Lo. *Id.* Plaintiff complained of difficulty urinating on May 24 and 27, 2024 and was examined and treated. *Id.* at 472, 474.

- On May 31, 2024, plaintiff attended an outside cardiology appointment. *Id.* at 465-70. He had complied with medications as prescribed. *Id.* at 465. The nurse practitioner noted that plaintiff previously underwent an ablation in February 2018 but had recurrence of pre-excitation. *Id.* An electrophysiology study showed low risk pathway. *Id.* A follow-up appointment is scheduled for September 3, 2024. Rec. Doc. 15-2 at 2.

- The most recent records show that plaintiff was place on a dental list and started on an antibiotic and pain medication due to an abscess in his mouth on June 2, 2024. *Id.* at 14-15. On June 4, 2024, he requested to see Dr. Lo about his depression and was referred, but twice refused to see the doctor. *Id.* at 13. On June 6, 2024, plaintiff complained of back, leg and tailbone pain. *Id.* at 12. He was to continue on Naproxen with a plan to re-evaluate upon completion of the prescription. *Id.* He continued to complain of pain on June 7, 2024. *Id.* at 10. He was already taking a pain medication, but was prescribed hot showers, massage therapy and mild exercises. *Id.* He was later observed to have no difficulty changing positions from laying to sitting and had no complaints. *Id.* at 11. He had no complaints when the nurse saw him later that day. *Id.*

10

Along with the recitation set forth above based on the medical records, plaintiff stated at the status conference on June 3, 2024, that he is taking his heart medication and wearing a heart monitor. *See* Rec. Doc. 11. Defense counsel confirmed that plaintiff is housed in a medical cell immediately outside the medical department and that plaintiff has additional appointments scheduled outside the jail. *See id.*

For these reasons, there is not a substantial likelihood that plaintiff will ultimately succeed on the merits of his inadequate medical care claim. On the contrary, such claims rarely succeed, mainly because a prisoner's federal constitutional right to medical care is extremely limited.

"The Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials."[7] *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quotation marks omitted)). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

As to the "deliberate indifference" requirement, the U.S. Court of Appeals for the Fifth Circuit has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any

---

[7] In the discussion of this medical claim, the Court cites to cases decided under both the Fourteenth and Eighth Amendment because the duty involved is identical regardless of whether the claim is asserted by a pretrial detainee or a convicted prisoner. *See, e.g., Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019).

> similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

*Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. For example, "the question of whether ... additional ... forms of treatment [are] indicated is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Generally, such matters of professional medical judgment are better left to the medical expertise of physicians rather than to the legal expertise of judges. *Henry v. Higgins*, No. Civ. A. 12-1886, 2013 WL 1694864, at *3-4 (E.D. La. Apr. 18, 2013).

To succeed on a deliberate-indifference claim, plaintiff must show (1) defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the defendants drew that inference. *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). Thus,

here, plaintiff must show defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Domino*, 239 F.3d at 756).

It is doubtful that plaintiff can establish deliberate indifference. Here, the records show that plaintiff has received extensive and ongoing medical treatment, including emergency care at outside hospitals several times since his arrest on April 4, 2024. "[M]edical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41F.3d 232, 235 (5th Cir. 1995). While plaintiff may believe that his medical treatment by defendants has been subpar, the fact that a prisoner's medical care "may not have been the best money could buy" is insufficient to establish a federal violation. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir.1992); *see also Gobert*, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir.1978). Moreover, if an inmate has in fact received medical treatment, federal constitutional protections are not violated just because that treatment failed or because pain persisted despite the treatment. *Gobert*, 463 F.3d at 346; *Williams v. Chief of Medical Operations, Tarrant County Jail*, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), *adopted*, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). Further, the U.S. Constitution does not require even that an inmate's medical care be free from negligence or medical

malpractice. *Hall v. Thomas*, 190 F.3d 693, 697–98 (5th Cir.1999); *see also Kelly v. Gusman*, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); *Cerna v. Texas Tech Medical Staff*, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Claims of negligence or malpractice present issues of *state* law for *state* courts, not federal constitutional issues for a federal court. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Cerna*, 2004 WL 42602, at *2

That plaintiff opines that more could have been done for him and with greater alacrity is of little moment. Absent exceptional circumstances, a prisoner's disagreement with his medical treatment does not constitute deliberate indifference. *Gobert*, 463 F.3d at 346. For example, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment," *Estelle*, 429 U.S. at 107, and federal courts are therefore generally loath to second-guess such medical decisions in federal civil rights actions. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); *Castro v. Louisiana*, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D .La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action.").

At this early stage of the proceedings, such second-guessing is inappropriate, especially when, as here, the records presented demonstrate that plaintiff has consistently received medical treatment since his arrest on April 4, 2024. Therefore,

it is recommended that plaintiff's request for a preliminary injunction be denied and that any decision on the constitutionality of his medical care should instead be resolved on dispositive motions or, if necessary, at trial. *See, e.g., Zuniga v. University Health Sys.*, 71 F. App'x 293 (5th Cir.2003) (conclusional allegations of irreparable harm are insufficient to warrant immediate injunctive relief); *Taylor v. Berry*, Civ. Action No. 2:05CV381, 2007 WL 1536796 (S.D. Miss. May 23, 2007) (denying a motion for a preliminary injunction because "[i]f plaintiff's claims regarding his medical treatment are meritorious, appropriate relief may be awarded or obtained at trial"). If this recommendation is accepted, this matter will remain referred to the undersigned U.S. Magistrate Judge and plaintiff's underlying claims will be further considered once defendants have been served and responded to the complaint.

### C. Request for Transfer

Finally, plaintiff requests to be released or transferred to another facility. But there is no constitutional right to be housed in any particular facility or to be transferred from one facility to another, even if medical treatment in one prison may be preferable to that in another. *Olim v. Wakinekona*, 461 U. S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976); *Fuselier v. Mancuso*, 354 F. App'x 49, 49 (5th Cir. 2009) (citing *Olim*, 461 U.S. at 245); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). Accordingly, plaintiff's transfer request lacks support. *Jones v. LeBlanc*, Civ. Action No. 10-0346, 2013 WL 3148634, at *9 (W.D. La. June 19, 2013); *Hymel v. Champagne*, Civ. Action No. 07-450, 2007 WL 1030207, at *2 (E.D. La. Mar. 28, 2007).

Beyond the doubts outlined above concerning plaintiff's likelihood of success on the merits, none of the other three bases for a preliminary injunction have been demonstrated on this record. There is no substantial threat of *irreparable* injury if plaintiff is not transferred. The record shows that plaintiff is receiving medical care both at the jail and outside. He has a follow-up appointment with an outside medical professional scheduled for September 3, 2024. Rec. Doc. 15-2 at 2. Should the Court ultimately determine that the named defendants were intentionally indifferent to a serious medical need, plaintiff's pain can be redressed with monetary compensation. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975).

It also has not been shown that plaintiff's risk of injury outweighs the potential harm to legitimate prison administrative functions that would result from the kind of intrusive court intervention in prison affairs requested by plaintiff. This is true especially given courts' "reluctan[ce] to interfere" with matters of prison administration. *Accord Young*, 449 F.2d at 339. Thus, consistent with the fourth factor, courts have a long tradition of avoiding a disservice to the common interest. In this case, that common interest reflects the prison official's discretion to manage their facilities and services provided that they do so within constitutional bounds. Thus, plaintiff has failed to meet his burden and his motion should be denied.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's motion for a temporary restraining order and preliminary injunction, Rec. Doc. 6, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 13th day of August, 2024.

**EVA J. DOSSIER**
**UNITED STATES MAGISTRATE JUDGE**